# Bilotta v. Media, Middleton, Aston & Chester Electric Railway Company, Appellant.

*Negligence—Street railways—Notice of danger—Individual peculiarity of plaintiff.*

Where the inability of a party injured owing to some individual peculiarity of his, unknown to the defendant, to understand what to the ordinary person would be a sufficient warning, is the immediate and proximate cause of his injury, the accident is to be referred to the party's misfortune, and not to the negligence of the defendant simply because of failure to give effectual warning.

In an action against a street railway company to recover damages for personal injuries it appeared that before the plaintiff was injured a tree had fallen across defendant's tracks, and had dragged down with it a number of telephone wires. These wires had become tangled in the branches, and some of them had become charged from contact with the trolley wires. Cars were run up from both directions to the tree, and the passengers were transferred from one car to the other so as to make the continuous journey. The plaintiff, an Italian, who could not speak English, was warned by the motorman on the car on which he was a passenger to remain seated in the car until the other car had arrived, and that it was dangerous to cross over. Plaintiff left the car and started to cross over, when he was warned by the defendant's superintendent, both by words and movements, to stay back. He disregarded the warning and came in contact with a wire and was injured. Defendant presented this point: " There was no obligation on the part of the defendant company to warn the plaintiff in Italian, and if the jury find that the warning was such as to indicate danger ahead to any man of ordinary intelligence, plaintiff cannot recover." This point was answered as follows: "We will say that if from any motion or act of the defendant, he, the plaintiff, understood the warning, then he cannot recover. But we cannot say that if they warned him in a language that he did not understand, and that he did not heed it, that it would be contributory negligence for him to pay no attention to it; but we do say to you that the point is affirmed if he understood it, though he might not have understood the language, if he understood the motions and directions not to go on, understood that they were dangerous." *Held*, (1) that the answer to the point was in effect a rejection; (2) that the point called for an unqualified affirmance with respect both to the question of the negligence of the defendant, and to the contributory negligence of the plaintiff.

Argued Feb. 10, 1908. Appeal, No. 218, Jan. T., 1907, by defendant, from judgment of C. P. Delaware Co., June T., 1905, No. 94, on verdict for plaintiff in case of Guiseppe Bilotta v. Media, Middleton, Aston & Chester Electric Railway Company. Before MITCHELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before JOHNSON, P. J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $1,548.25. Defendant appealed.

*Error assigned* among others was answer to defendant's tenth point, both point and answer being quoted in the opinion of the Supreme Court.

*David Wallerstein*, with him *E. A. Howell*, for appellant.— The defendant was under no duty to warn the plaintiff in Italian : Lobstein v. Sajatovich, 111 Ill. App. 654 ; R. R. Co. v. Feller, 84 Pa. 226.

*Jos. H. Hinkson*, for appellee.—When a passenger has to change cars the street railway company must furnish a safe passageway between the cars : Sowash v. Consolidated Traction Co., 188 Pa. 618.

The answer to the tenth point was proper.

Where the degree of care varies according to the circumstances it is a question for the jury : Gates v. Railroad Co., 154 Pa. 566 ; Schilling v. Abernethy, 112 Pa. 437.

OPINION BY MR. JUSTICE STEWART, April 20, 1908 :

The plaintiff boarded a car of the defendant company at Chester to go to a point on its Media line beyond the intersection at Folsom. It so happened that about an hour before, a large tree, uprooted by a storm, had fallen across the track and the public road alongside, at a point between Chester and Folsom, temporarily preventing through travel in the same car. To meet conditions existing while the work of removal was going on, the company ran its cars from Chester to the place of obstruction, then back again to Chester ; and in the same way ran the cars from Folsom to the place of obstruction, and then back, permitting an exchange and transfer of passengers at the place of interruption. The fallen tree had stood north of the track, and beyond two telephone lines, one of which belonged to the defendant company and the other to an independent company. In its fall the tree carried the wires of these lines down with it and across the trolley wire. Some of the wires thus thrown down were broken, some were tangled in the branches of the trees, and all to greater or less extent were carried over the whole space covered by the debris. When the car in which the plaintiff was traveling had reached the point of obstruction, plaintiff alighted, and while attempting to cross over to where the other car was, or

where it was expected, a distance of about seventy-five feet, he encountered a broken wire, which he says was concealed from his view, and received the shock which occasioned his injury. On the trial of the case the effort was to show negligence on the part of the defendant, in failing to adopt proper measures to secure the safety of its passengers, in connection with their transfer from one car to the other beyond the obstruction upon the track and road. True, this is not the negligence charged in the statement of the cause of action, but it is what was set up on the trial, what was defended against there, and what is insisted upon here. The situation occasioned by the falling of the tree was unusual and unexpected, but with electric wires scattered in such confusion, in the branches of the trees, upon the ground, and in some places imbedded in the ground, it was a situation that manifestly exposed to danger anyone attempting to cross over the debris, and it became the plain duty of the company not only to see that there was a safe way of transfer from one car to the other, since it had invited such transfer, but it was clearly its duty to warn passengers of the danger of attempting to pass over or through the obstruction before the wires had been disconnected or removed. Conceding that a safe way did exist by avoiding entirely the obstruction and passing around it—a condition which must have been obvious—the question remained, did the company do what it should have done by way of warning the passengers of the danger of attempting to cross over through the brush? The brush itself, on that part of the public road where plaintiff met his injury, offered no serious impediment to travel, and the only source of danger there was from the scattered wires. Of this danger it was the duty of defendant to give warning; its employees there engaged were fully informed as to the situation, for several of them testified that they had seen sparks of fire shooting from the debris, smoke and flame. It is not a question of what the defendant did, or what it failed to do, in giving warning to other passengers; in this matter the plaintiff stands in a class by himself, since it is in evidence that special effort was made to caution and warn him, even to the extent of directing him to desist from his efforts to cross over when he attempted so to do. If the warning was given him in such a

way that he must have understood it, and he gave it no heed, he alone would be responsible for the consequences of his daring. The motorman testified that when he, the plaintiff, was about to leave the car, then about twelve feet from the fallen tree, to cross over, he told him to remain seated, that the car he intended to take on the other side had not yet arrived, and that it was dangerous to cross over there. Defendant's superintendent was the first to alight from the car, and the plaintiff followed next. The former proceeded to where the workmen were employed in cutting the tree, and upon looking around saw the plaintiff approaching directly at a distance of about five yards. He testified that he called to the plaintiff to stay back, and indicated like direction by movements. Had these warnings been heeded, the accident most likely would have been avoided. To escape the effect of this testimony it was argued that plaintiff, being an Italian, unfamiliar with our language, did not understand the warning given. The purpose of defendant's tenth point was to meet this aspect of the case. It was as follows : " There was no obligation on the part of defendant company to warn the plaintiff in Italian, and if the jury find that the warning was such as to indicate danger ahead to any man of ordinary intelligence, the plaintiff cannot recover." This point called for an unqualified affirmance with respect to both questions raised, the negligence of the defendant and the contributory negligence of the plaintiff. If the warning was such as would indicate danger ahead to anyone of ordinary intelligence, a disregard of it would unquestionably convict the party disregarding it of contributory negligence. If the defendant's servants knew, or had reason to believe, that the person they were attempting to warn in English was ignorant of that language, they would have come short of their duty had they done nothing more ; but without anything to indicate peculiarity in the plaintiff, distinguishing him from the ordinary traveler, defendant's servants had a right to presume that what would be notice to the ordinary traveler would be notice to him. His inability to understand English required greater caution on his part in advancing, but added nothing to the duty of the defendant, except as such fact was brought to its notice. Had the plaintiff been deaf, it would hardly be

contended that failure to spell out danger to him according to the manual of mutes would have been negligence. With no greater reason can the failure to address the plaintiff in his own language be accounted negligence. While the learned trial judge in terms affirmed the point presented, he so qualified it that his answer was in effect a rejection of the point. His language was : " We will say that if from any motion or act of the defendant he, the plaintiff, understood the warning, then he cannot recover. But we cannot say that if they warned him in a language that he did not understand, and that he did not heed it, that it would be contributory negligence for him to pay no attention to it ; but we do say to you that the point is affirmed if he understood it, though he might not have understood the language, if he understood the motions and directions not to go on, understood that they were dangerous." The point was directed to both questions in the case—the negligence of the defendant and the contributory negligence of the plaintiff. We have considered it mainly in connection with the first, upon which it had immediate and direct bearing. Where the inability of the party injured, owing to some individual peculiarity of his, unknown to the defendant, to understand what to the ordinary person would be a sufficient warning, is the immediate and approximate cause of his injury, the accident is to be referred to the party's misfortune, and not to the negligence of the defendant, simply because of failure to give effectual warning. How far the jury was influenced by the court's ruling in this peculiar manner of course we cannot say. It is enough to know that the point had a direct bearing upon a material question in the case, and should have received an unqualified affirmance. Apart from this the record shows no error. The case was one for the jury on both questions raised, because of conflicting evidence. The tenth assignment of error is sustained ; the other assignments are overruled.

The judgment is reversed and a venire facias de novo awarded.