419 A.2d 1249

**Raija T. COATH, Appellant,**

**v.**

**Charles W. JONES, t/a Jones Electronic Service Company.**

Superior Court of Pennsylvania.

Argued June 11, 1979.

Filed April 25, 1980.

Thomas H. Tropp, Media, for appellant.

Peter A. Dunn, Media, for appellee.

Before SPAETH, STRANAHAN and SUGERMAN, JJ.*

STRANAHAN, Judge:

█ The matter before the court results from a preliminary objection in the nature of a demurrer being sustained by the lower court which in effect put the plaintiff out of court and is therefore appealable.[1] *Hudock v. Donegal Mutual Insurance Company*, 438 Pa. 272, 264 A.2d 668 (1970).

The facts as gathered from the plaintiff's complaint are that the defendant conducted a business known as Jones Electronic Service Company. On December 5, 1977, the plaintiff was raped in her home by Kehoe who gained entrance to plaintiff's home by representing he was there at defendant's direction and on defendant's business.

Kehoe was, on various prior occasions, sent by the defendant to plaintiff's home on defendant's business and on those various occasions Kehoe gained entrance to plaintiff's home solely because he was there at defendant's direction on defendant's business.

On December 5, 1977, the plaintiff believed that Kehoe was an employee of the defendant for she had no notice or knowledge that would lead her to believe otherwise.

There is no allegation in the complaint that a master–servant relationship existed between the defendant and Kehoe at the time of the assault. Therefore, it must be

---

* President Judge JOHN Q. STRANAHAN of the Court of Common Pleas of Mercer County, Pennsylvania, and Judge LEONARD SUGERMAN of the Court of Common Pleas of Chester County, are sitting by designation.

1. The lower court's order permitted the complaint to be amended to allege a master–servant relationship between the defendant and Kehoe but plaintiff could not make such an allegation.

concluded that this relationship had terminated prior to December 5, 1977.

The allegations of negligence in the complaint are:

(a) Defendant failed to exercise reasonable care in his hiring procedure when he or his agent, servant or employee hired Kehoe.

(b) Defendant continued Kehoe in his employ after hiring Kehoe even though defendant knew or, by the exercise of reasonable care, should have known of Kehoe's dangerous propensities to violence.

(c) If Kehoe's employment with defendant was terminated prior to December 5, 1977, defendant failed to give plaintiff notice of said termination.

Taking the plaintiff's complaint at its best it presents two issues, both of which must be answered affirmatively before plaintiff can proceed beyond the demurrer stage.

The first issue is whether an employer can be negligent as a result of the hiring of an employee who the employer knew, or should have known, had a propensity for violence.

The issue has been met in a number of cases with the result that an employer may be negligent if he knew or should have known that his employee had a propensity for violence and such employment might create a situation where the violence would harm a third person. *Dempsey v. Walso Bureau, Inc.*, 431 Pa. 562, 246 A.2d 418 (1968) indicates that an employer may be negligent for the failure to exercise reasonable care in determining an employee's propensity for violence. See also, *Frazier v. Pennsylvania R. R.*, 38 Pa. 104 (1861), *Rosenstiel v. Pittsburgh Railways Co.*, 230 Pa. 273, 79 A. 556 (1911).

Section 302B, Restatement 2d, Torts, provides:

An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of a third person which is intended to cause harm, even though such conduct is criminal.

We, therefore, conclude that the defendant could be found negligent if Kehoe was known to have the inclination to assault women or if the defendant should have known that.

■ The second question deals with the manner in which the defendant could terminate his negligence. If the hiring and retention of a person with a propensity for violence is negligent, then the negligence would continue during the employment. Does the negligence cease when the employee is discharged? In many instances it may, but where the employer has created a special relationship whereby his customers admit his employee into their homes, then the employer may be required to give notice or warning to the customer that the employee is no longer employed. Knowing this, the customer would not permit entry of the former employee under the misapprehension that he is still working for the employer and thereby run the risk of a sexual assault. Also, if the customer knew Kehoe was no longer employed by defendant, she would be aware that Kehoe had no reason for being at her home.[2]

As a general rule the giving of a warning does not relieve one of negligence [3] but under certain situations a warning may relieve or terminate negligent conduct. Section 301 of the Restatement 2d Torts deals with this general situation. It provides:

> (2) The exercise of reasonable care to give reasonably adequate warning prevents the doing of an act from being negligent, if . . . . (b) The risk involved in the act, or its unreasonable character, arises out of the absence of warning.

Under annotation (e) of said Section, it provides:

The actor is required to exercise reasonable care to give an effective warning to those likely to be affected by his act, but he is not bound at his peril to bring the warning

**2.** The type of warning required under these circumstances might be that Kehoe was no longer employed. All that is required is a *reasonable* warning be given.

**3.** Section 301(1) Restatement 2d, Torts.

home. He is required to do what a reasonable man would regard as necessary to this end, but he is not required to do more than a reasonable man would regard as sufficient. See *Bilotta v. Media et al.*, 220 Pa. 542, 70 A. 123 (1908).

There do not appear to be any Pennsylvania cases dealing with this general subject matter but there is a series of California cases that shed some light on the problem.

In *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 551 P.2d 334, 131 Cal.Rptr. 14 (1976) Prosenjit Poddar killed Tatiana Tarsoff. Plaintiffs, Tatiana's parents, alleged that two months before the killing Poddar confided his intention to kill Tatiana to Dr. Moore, a psychologist employed by a hospital at the University of California. Plaintiffs alleged that no one warned plaintiffs of Tatiana's peril and therefore the various defendants were liable.

The lower court sustained the defendant's demurrer and an appeal followed.

The defendants contended that in the circumstances of the present case they owed no duty of care to Tatiana or her parents. The court states 551 P.2d at p. 343, 131 Cal.Rptr. at p. 23:

> Although, as we have stated above, under the common law, as a general rule, one person owed no duty to control the conduct of another, nor to warn those endangered by such conduct, *the courts have carved out an exception to this rule in cases in which the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct.* (Emphasis added.)

In *Johnson v. State*, 69 Cal.2d 782, 447 P.2d 352, 73 Cal.Rptr. 240 (1968), a foster parent brought a civil action against the state for assault upon her by a foster youth placed in her care by the state. One of the basis of the suit was that the parole officer had failed to warn the plaintiff of the dangerous propensities of the foster child.

At page 355 the court states "these cases impose a duty upon those who create a foreseeable peril, not readily dis-

coverable by endangered persons, to warn them of such peril." Among the authorities cited in support of this proposition of law is Restatement 2d, Torts, section 301(2)(b).

In *Thompson v. County of Alameda,* Cal.App., 152 Cal. Rptr. 226 (1979), parents brought action against county for wrongful death of their five year old son, alleging that county had acted recklessly, wantonly and with gross negligence in releasing from custody a juvenile delinquent who was known to have dangerous propensities toward young children. Within twenty–four hours the juvenile sexually assaulted and murdered parents' five year old son.

One of the allegations was failure to warn people in the neighborhood. The court reversed lower court's dismissal and held the complaint set forth a cause of action.

All of these cases hold that when the defendant stands in some special relationship to either a person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct, the defendant owes a duty to reasonably warn the victim.

When does this special relationship exist? In Prosser, Torts, Fourth Edition, sec. 56, many examples of this special relationship are given, including the following:

> It also is recognized that if the defendant's own negligence has been responsible for the plaintiff's situation, a relation has arisen which imposes a duty to make a reasonable effort to give assistance and avoid any further harm.

From all this we believe that if the defendant were negligent in selecting Kehoe as an employee and if it were foreseeable by the defendant that Kehoe, even though he was discharged as an employee, could attack a customer because he had, on a previous occasion, been admitted to her home on the employer's business, then there would exist a special relationship between defendant and the customer and a duty on the employer to give a reasonable warning to the customer.

We conclude that the lower court improperly sustained the defendant's preliminary objection. Under the status of the pleadings the plaintiff has alleged facts which could support defendant's liability.

It may be as the evidence develops in this case, the plaintiff cannot show negligence on the part of the defendant but plaintiff's complaint is sufficient to permit her to proceed beyond the demurrer stage.

A demurrer should be sustained only, where it appears with certainty that upon the facts alleged, the law will not permit recovery. *Papieves v. Kelly,* 437 Pa. 373, 381, 263 A.2d 118, 122 (1970).

The order of the lower court sustaining the demurrer to the complaint is reversed.