## Doe v. Eckerd Corporation

C.P. of Lawrence County, No. 10479 of 2009, C.A.

*Douglas J. Olcott,* for plaintiff.
*Frank M. Gianola,* for defendants.

MOTTO, *P.J.,* June 12, 2014—Before the court for disposition is a motion for summary judgment filed by defendant Just-Mark Construction Company ("JMC") which contends that plaintiffs have failed to produce sufficient evidence to support their claim that Just-Mark Construction was negligent in the supervision and retention of defendant Jerry Valecko pursuant to the Restatement (Second) of Torts § 317 or to a general theory or negligence.

The instant case arises out of allegations that plaintiff — minor children were sexually assaulted by defendant Jerry Valecko on the premises of the construction site located in Ellwood City, Pennsylvania. defendant Just-Mark construction company was contracted by defendants orion and/or Rite Aid corporation as the general contractor for the construction of a Rite Aid Pharmacy located at 111 5th Street, Ellwood City,

Pennsylvania. As the general contractor for the project, JMC was responsible for overseeing the work of the subcontractors hired to complete the project. On June 7, 2010, JMC hired valecko as their superintendant for the Ellwood City, project. As part of his job requirements, Valecko was required to be on-site everyday and supervise the subcontractors, schedule the subcontractors and provide daily reports on the progress of the project. Valecko worked at JMC as a superintendent until his termination on February 2, 2011. According to Anthony Pivik, founder and part-owner of JMC, his son, Justin Pivik and another employee, Del Barr, were at the job site on one particular occasion on a saturday in late January or early February of 2011. Justin Pivik testified that while working, he saw Valecko talking to a child, maybe 12-13 years old, in the parking lot of the construction site. When Valecko was asked who the child was, Valecko responded he was a "sidewalk superintendent." Shortly after this incident Mr. Barr discovered that Valecko was a registered sex offender and was listed on the online Megan's Law list. According to Ronald Speicher, JMC's project manager for the drug store project, around the same time he received a call from one of the subcontractors advising that there were children at the job site. On the following Monday, Mr. Barr brought this information to the attention of Anthony Pivik, who promptly terminated Valecko's employment at JMC that same day. JMC has acknowledged that valecko was fired because it was detrimental to have him as an employee. On that same day, Anthony Pivik also reported Valecko to the local police department.

After his arrest and subsequent firing from the company, Valecko admitted to sexually molesting three

minor children in the construction trailer located on the site. At the time Valecko was hired by JMC, he had previously plead guilty to one count of indecent assault following a 1997 case in which he was placed on four years probation for fondling an eleven year old boy, had been fired from his previous job after being arrested and charged with molesting four other young boys and was a registered sex offender on the Commonwealth's Megan's Law website.

According to Valecko, shortly after beginning construction in October of 2004 he befriended minor plaintiffs John Doe #1, John Doe #2, and John Doe #3, children of plaintiff Jane Doe, all of Ellwood City. He allowed the minor plaintiffs and other neighborhood children to wander around the job site, climb on the construction equipment, and hang out in the construction trailer, which allegedly contained a video gaming system, children's toys and games, pornographic materials, a video camera and miscellaneous living items. Valecko's molestations eventually resulted in his April 2005 arrest and guilty plea to involuntary deviate sexual intercourse with a child, indecent assault of a person less than 13 years of age and corruption of minors. According to the testimony, at least two subcontractors were aware of the inappropriate behavior on the park of Valecko; one stated that "kids followed him around like he was the pied piper," and another described an incident in which he observed a young shirtless boy sitting on Valecko's lap in the trailer, while several other shirtless underage males were also present.

Plaintiffs filed a complaint in the Court of Common Pleas of Lawrence County, Pennsylvania on March 26, 2009. The complaint names several defendants, including Just-Mark Construction Company. In their complaint,

plaintiffs set forth a cause of action against JMC based on negligence. Specifically, plaintiffs claim that defendant JMC negligently retained Valecko as an employee when they knew or should have known that he was engaging in deviant sexual conduct with children. In a separate cause of action, plaintiffs also claim that JMC is liable under the Restatement (Second) of Torts §317. In this claim, plaintiffs assert that defendant JMC breached its duty to control Valecko when they knew, or should have known that he had criminal propensities. After the parties participated in discovery, defendant JMC has now filed a motion for summary judgment claiming that plaintiff has failed to establish that JMC is liable to plaintiffs for the negligent supervision and retention of defendant Jerry Valecko or liable pursuant to §317 of the Restatement (Second) of Torts, which governs an employer's duties regarding employees acting outside of the scope of their employment.

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital*, 753 A.2d 829 (Pa. Super. 2000). Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report or if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2.

Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. *Kafando Erie Ceramic Art Co.*, 764 A.2d 59, 61 (Pa. Super. 2000)(citing *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 650-651 (Pa. Super. 1999). A material fact, for summary judgment purposes, is one that directly affects the outcome of the case. *Gerrow v. Silicones, Inc.*, 756 A.2d 697 (Pa. Super. 2000).

When determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hughes v. Seven Springs Farm Inc.*, 563 Pa. 501, 752 A.2d 339 (2000); *Dean v. Commonwealth Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000). Summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Comm'n*, 555 Pa. 149, 153, 723 A.2d 174, 175 (1999); *Basile v. H&R Block*, 761 A.2d 1115 (Pa. Super. 2001); *Kuney v. Benjamin Franklin Clinic*, 751 A.2d 662 (Pa. Super. 2000); *Stevens Painton Corporation v. First State Insurance Company*, 746 A.2d 649 (Pa. Super. 2000).

Only when the facts are so clear that reasonable minds cannot differ, a trial court may property enter summary judgment. *Basile, Supra.* If there are no genuine issues of material fact in dispute or if the non-moving party has failed to state a prima facie case, summary judgment

may be granted. *Dudley v. USX Corporation*, 414 Pa. Super. 160, 606 A.2d 916 (1992). Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. *Rauch v. Mike-Mayer*, 783 A.2d 815 (Pa. Super. 2001). The trial court must confine its inquiry when confronted with a motion for summary judgment to questions of whether material factual disputes exist. *Township of Bensalem v. Moore*, 152 Pa. Cmwlth. 540, 620 A.2d 76 (1993). It is not the function of the court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission*, 143 Pa. Cmwlth. 494, 579 A.2d 1358 (1990).

First, defendant JMC contends that plaintiff has failed to present evidence to support their claim that JMC was negligent in their supervision and retention of defendant Jerry Valecko. Specifically, plaintiffs contend that JMC was negligent by failing to create and enforce regulations at the construction site, failing to properly monitor Valecko and by permitting him to engage in inappropriate sexual encounters with young male children despite numerous indications of his propensities and predisposition to do so.

It is well established that a claimant must demonstrate the following four elements to establish a claim for negligence: (1) a duty or obligation recognized by the law that requires an actor to conform his actions to a standard of conduct for the protection of others against unreasonable risk; (2) breach of duty; (3) reasonably close causal connection between the breach of duty and the injury sustained; and (4) actual loss or damages that

result from the breach. *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 654 (Pa. Super. 2002); *Merlini ex rel. Merlini v. Gallitzin Water Authority*, 602 Pa. 346, 354, 980 A.2d 502, 506 (2009). A party must first owe a duty in order for negligence to exist. *See Atlhaus v. Cohen*, 562 Pa. 547, 522, 756 A.2d 1166, 1168 (2000)(the primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff); *Gibbs v. Ernst*, 538 Pa. 193, 210, 647 A.2d 82, 890 (1994)(any action in negligence is premised on the existence of a duty owed by one party to another). In most cases, the question of whether a duty exists is a question of law and not fact. *Huddelston v. Infertility Center of America*, 700 A.2d 453 (Pa. Super. 1997).

With regard to duties owed by employers, the Supreme Court of Pennsylvania has held that employers may be held negligent for failure to exercise reasonable care in the hiring, retention or supervision of an employee if they knew or should have known that the employee had a propensity to commit criminal acts and that, by employing them, a third person may be in danger of harm. *Dempsey v. Walso Bureau, Inc.*, 431 Pa. 562, 246 A.2d 418 (1968). This duty on employers is inferred from the general duty placed on all persons not to put others at risk of harm by their own actions. *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 40 (Pa. Super. 2000). In *Brezenski*, the Superior Court noted:

> An employer may be held negligent for the failure to exercise reasonable care in determining an employee's propensity for violence in an employment situation when the violence would harm a third person. In these situations the victim must establish that the employer breached a duty to protect others against a risk of harm. When the victim does not enjoy a special relationship

with the employer and is, in fact, a stranger, the duty owed may be inferred from the general duty imposed on all persons not to place others at risk of harm through their action. The scope of this duty is limited to those risks that are reasonably foreseeable by the actor in the circumstances of the case.

*Brezenski*, 755 A.2d at 40.

In describing negligence law as it relates to employers in their hiring, retention and supervision of employees the restatement of agency notes that:

The principal may be negligent because he has reason to know that the servant...because off his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. An agent, although otherwise competent, may be incompetent because of his reckless or vicious disposition, and if a principal without exercising due care in selection, employs a vicious person to do an act...he is subject to liability for harm caused by the vicious propensity. If liability results, it is because, under the circumstances, the employer has not taken the care which a prudent man would take in selecting the person for the business at hand. There is liability only to the extent that the harm is caused by the quality of the employee which the employer had reason to suppose would be likely to cause harm.

Restatement (First) of Agency §213, (d) Agent dangerous (1933).

In the instant case, JMC seeks summary judgment asserting that they should not be held liable for Valecko's actions because there is insufficient evidence to show that JMC knew or should have known that

Valecko was acting inappropriately with the minor male children. JMC contends there is no evidence sufficient to show that JMC knew or should have known that Valecko was engaging in inappropriate behavior while employed as a superintendent at the Ellwood City job site. JMC asserts that from the time that Valecko was hired on June 7, 2010 to the date of his termination on February 2, 2011, JMC was completely unaware of any sexual contact occurring at the job site. In fact, with the exception of Justin Pivik, every employee of JMC that visited the job site during Valecko's employment testified that they did not see any children or evidence of children. JMC contends that they only became aware of the presence of children in the vicinity of the job site a few days prior to Valecko's termination when Justin Pivik witnessed Valecko having a conversation with a child in the parking lot on a Saturday. Justin Pivik testified that he did not find this unusual and that any concern he had was related to the safety of a child at or near an active construction site. At no point did this conversation give him pause or reason to infer that something inappropriate was occurring. Shortly after Justin Pivik witnessed the conversation between Valecko and the child in the parking lot, Del Barr discovered that Valecko was a registered sex offender on Megan's list. Upon discovering this information, Del Barr immediately brought it to the attention of Anthony Pivik, part-owner of JMC, who then made the decision to promptly terminate Valecko's employment. Additionally, Valecko confirms in his affidavit that the subcontractors on the job site, the employees and the owners of JMC were all unaware of any inappropriate conduct or inappropriate activities occurring between himself and the children.

Plaintiffs contend that various subcontractors were aware of Valecko's inappropriate and predatory behavior and, therefore, JMC had constructive notice. Plaintiffs contend that universally, every subcontractor working on the job site thought that it was unusual that there were kids on the job site and in the job trailer on a daily basis. One of the subcontractors testified that he saw kids on the job site outside playing and catching footballs and he saw the kids go into the job trailer on numerous occasions and there was always one boy in particular boy who lived across the street. Another subcontractor testified that he saw Valecko on the job site with kids every day and that the kids followed Valecko around like the pied piper and that they would spend time alone with Valecko in the job trailer. John Halliday, a plumbing subcontractor who spent time on the job site testified that he saw kids in the building, on the scissor lifts and in the trailer. He stated that when he walked into the trailer kids would be sitting around with Valecko and occasionally Valecko would leave the job site and then come back with the children.

Timothy Taylor, one of the subcontractor employees working at the job site, testified that he noticed children on the job site every day. Mr. Taylor recalled commenting about this unusual behavior to his employer. Mr. Taylor specifically recalled one particular incident wherein he walked into the job trailer and found a young boy between the age of eight and nine sitting on Valecko's lap without a shirt on. According to Mr. Taylor, he also found it unusual that Valecko kept a blanket and pillow in the job trailer. He also stated that when he learned Valecko was fired because he was a registered sex offender he was not surprised because it was obvious that Valecko was interested in little boys. Plaintiffs contend that there

was nothing that would have prevented someone from JMC from seeing what was going on with Valecko and the young boys at the job site if they had showed up more often and at times later in the day. According to Mr. Taylor, Valecko never hid his conduct towards the young boys he permitted onto the construction site and into his job trailer.

Plaintiffs' contend that they Pennsylvania superior court's holding in *Heller v. Patwil Homes, Inc.*, 713 A.2d 105 (Pa. Super. 1998) is instructive to the matter presently before the court. In *Heller*, William Strouse, an employee of Patwil Homes, fooled prospective home buyers through an investment scheme. Strouse utilized the offices of Patwil Homes, Inc. to solicit prospective home buyers to invest with him so they could upgrade the model home they intended to buy. Strouse made the solicitations in his Patwil Homes office and claimed. the scheme was endorsed by his employer. Strouse operated out of the employer's shop and enticed clients under the promise of generating money to build their dream homes with Patwil Homes. Strouse's clients were cultivated while he was an employee of the defendants, and Patwil Homes was an inducement to investment in the hope of generating money to erect or defray the cost of a Patwil Home. All of this was accomplished on company property, using company resources, and under the guise of advancing the company's interests. In their analysis, the Superior Court stated:

> We find the total absence of supervision once on the job exposes the employer/defendants to "constructive notice" that Strouse was engaging in activity mushrooming into criminal behavior leading to his incarceration. In the exercise of ordinary care, we hold the defendants should have known of Strouse's

conduct manifesting itself in the fleecing of Patwil Homes' clients operating out of the Nittany Mall office over a period of two months and in plain view of anyone interested enough to engage in a modicum of managerial supervision of a new hire responsible for sales of property exceeding $100,000.

*Heller*, 713 A.2d at 108.

In the instant case, plaintiffs contend that JMC should have known of Valecko's conduct on the job site wherein he showed a particular interest in young boys and signs of criminal behavior in plain view of anyone there to supervise. Evidence that is sufficient to put an employer on notice of an employee's criminal propensities after hiring him supports a valid negligent retention claim. *Dincher v. Great Atlantic & Pac. Tea Co.*, 356 Pa. 151, 51 A.2d 710 (1947). In *McBride v. Hershey Chocolate Corp.*, 200 Pa. Super. 347, 188 A.2d 775 (1963), the employer was found liable for negligently supervising and retaining an employee who sprayed the plaintiff/employee in the face with a pressurized water hose after plaintiff had complained about the employee to a supervisor that the employee was constantly belittling him and that the employee did anything he could in attempts to instigate a fight. In *McBride*, the plaintiff did not allege that Hershey Corporation knew of the employee's dangerous propensities prior to hiring him. After a finding that there were numerous reliable indications of the employee's violent tendencies in relation to the plaintiff, the court found the employee's subsequent assault to have been reasonably foreseeable by Hershey. This case is similar to the case at hand, as plaintiffs have produced evidence that various subcontractors were aware of highly unusual and inappropriate behavior on the part of Valecko.

The evidence currently before the court creates a question of fact relative to the issue of whether JMC knew or should have known that Valecko was acting inappropriately with the minor male children. Plaintiff has provided testimony by several subcontractors on the job site who stated that Valecko had male children on the job site on a daily basis and that Valecko never hid his conduct towards the young boys he permitted onto the job site and into his trailer. Nothing prevented JMC from coming on to the job site more often to supervise their employees. Under the Restatement of Agency, the principal may be negligent because he has reason to know that the servant, because off his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. Restatement (First) of Agency §213, (d) Agent dangerous (1933). In *Coath v. Jones*, 277 Pa. Super. 479, 419 A.2d 1249 (1980), the Pennsylvania Superior Court held that an employer could be held negligent for selecting an alleged rapist as an employee where it was foreseeable that the employee could attack a customer, even after the employee had been terminated where the employer should have known that the employee would gain access to a woman's house under the guise of performing duties for the employer and sexually assaulted her.

In the instant case, according to the various subcontractors' testimony, Valecko did not hide his conduct on the job site and was often seen spending time with young boys around the job site and in his work trailer. While JMC argues that they were not aware of the children on the job site and had no suspicions of any inappropriate sexual acts occurring during the work day or after hours, plaintiffs have produced sufficient evidence for a jury to infer that that JMC had constructive notice of Valecko's conduct and that the ensuing molestations were reasonably foreseeable.

Considering the testimony by the various subcontractors that children were constantly playing at the site and were in and around the construction trailer, and that the kids following Valecko around like he was the pied piper, it is feasible that a trier of fact would infer that JMC should have known that Valecko was acting inappropriately with the male children; hence making Valecko's actions reasonably foreseeable and consequently creating a duty on the part of JMC to prevent those actions from occurring. Plaintiff has produced sufficient evidence for a jury to find that JMC had constructive notice of Valecko's intentions and propensities and to find that JMC breached its duty owed, by failing to take steps to ensure that Valecko's inappropriate activities were not occurring at the job site. Therefore, the plaintiff has presented sufficient evidence to establish a question of fact as to whether JMC knew or should have known about the Valecko's improper behavior, which has caused harm to the minor children. As such, defendant's motion for summary judgment for the negligent supervision and retention of Jerry Valecko is denied.

Next, defendant JMC contends they are entitled to summary judgment because the evidence of record fails to support a claim under §317 of the Restatement (Second) of Torts. Count three of plaintiff's complaint sets forth a claim against JMC pursuant to §317 of the Restatement (Second) of Torts, which governs an employer's duties regarding employees acting outside of the scope of their employment. Section 317 governs employer duties regarding employees acting outside the scope of their employment and provides as follows:

§317. Duty of master to control conduct of servant

A master is under a duty to exercise reasonable care so

to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if:

(a) The servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) The master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts, §317 Duty of Master to Control Conduct of Servant.

Subsection (b)(ii) requires that the master or employer have actual or constructive notice of the necessity and opportunity for exercising such control. To fasten liability upon an employer under Section 317, it must be shown that the employer knew, or in the exercise of ordinary care, should have known of the necessity for exercising control of his employee. *See Dempsey v. Walso Bureau, Inc.*, 431 Pa. 562, 570, 246 A.2d 418, 422 (1968). An employer cannot be held liable unless the employer had knowledge of its employee's previous acts that are of the same nature or type that gave rise to the eventual injury. *See Dempsey*, 246 A.2d at 422 (an employer is liable when an employee performs an act and such act is one of a series of the same kinds of acts of which the employer

had knowledge and in which it acquiesced, and if such act of the employee is in its nature dangerous, then the employer is liable to one injured by its employee). Thus, plaintiffs must show that defendant JMC either knew or should have known that Valecko was engaging in sexually deviant behavior with the minor children at the job site.

In *McBride v. Hershey, supra.*, the plaintiff suffered severe injuries when a fellow employee seized a hose and discharged a scalding mixture of steam and water directly on his face, arms and chest. 200 Pa. Super. 347, 348, 188 A.2d 775, 776 (1963). The Pennsylvania Superior Court found that liability under Section 317 may be imposed since the employer knew or had reason to know that such an assault would occur. Specifically, the evidence on record in the case demonstrated that the two co-employees had an on-going feud for over eight years, which the employer was aware of. *Id.* at 350, 188 A.2d at 780. In addition, it was found that the employer knew that the assaulting employee frequently made belligerent remarks to the co-employee in an effort to instigate a fight. *Id.* Finally, the employer's foreman was aware that the assaulting employee had committed the same act on a previous occasion. *Id.* at 348, 188 A.2d at 778. *See also Hutchinson ex rel. Hutchinson v. Luddy*, 560 Pa. 51, 742 A.2d 1052, 1059 (1999)(finding that diocese had a duty under §317 to prevent priest from molesting more children where diocese knew that priest had engaged in pedophilic behavior in the past).

Here, plaintiff contends that all of the elements of the Restatement (Second) of Torts §317 are satisfied. Valecko was the servant of JMC. He was on the premises in the possession and control of JMC and was privileged to be there only as a servant to JMC. JMC knew or had reason

to know that they had the absolute ability to restrict or limit Valecko's access to the job site and his use of the job site and knew or should have known that such restrictions were necessary given that Valecko constantly had children with him at the job site and in his work trailer. Plaintiff contends that it is undisputed that JMC had the ability to control Valecko and knew of the necessity and opportunity to control him on the job site and failed to exercise that control.

According to JMC, once they became aware that Valecko was a registered sex offender on the sexual offender registry, they immediately terminated Valecko's employment and reported him to the local police. According to the testimony of Ronald Speicher, JMC's project manager, JMC terminated Valecko once they were aware he was on the sexual offender registry because it was a detriment to have him as an employee because he was a convicted child molester, and not because he was an incompetent foreman or simply for allowing children on the job site. Mr. Speicher testified that after firing Valecko, he and the owner of JMC went to the Ellwood City Police Department and reported that they had just fired Valecko from his position with JMC because of his status on the sexual offender registry and they were uncomfortable with so many children being around the area.

This court finds that since JMC exercised control immediately after became aware of Valecko's prior criminal history, the inquiry becomes whether JMC should have known, or did they have reason to know, of Valecko's past and should they have taken affirmative steps sooner so as not to create an unreasonable risk of bodily harm the minor children. That answer turns on when it became reasonable for JMC to be aware that children were being molested on

the job site. This is a factual inquiry for the jury. Valecko molested the minor plaintiffs on the premises in control of the employer, and, as previously discussed did so while acting outside the scope of his employment. Because this court has already addressed the possibility that a reasonable jury may infer that JMC should have known of Valecko's actions, both prerequisites of §317 have been met. Accordingly, it cannot be said as a matter of law that plaintiffs cannot recover based on a §317 negligence theory. It was Valecko's position as the construction site foreman that provided him with the means and access to spend time with the minor children and ultimately engage in sexual activity on the grounds of the employer. Valecko was able to groom the children because he had access to the job site and job trailer and the abuse itself occurred at the construction site. It is for the jury to determine if JMC was negligent under §317 because they should have known Valecko was molesting children at the job site. Under §317, a reasonable jury could conclude that JMC knew or should have known of Valecko's actions, but nevertheless failed to exercise reasonable care to prevent Valecko, acting outside the scope of his employment, from intentionally harming the young boys while on the construction site.

For the reasons set forth in this opinion, the defendant's motion for summary judgment is denied.

## ORDER OF COURT

And now, this 12th day of June, 2014, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered and decreed that the motion for summary judgment of defendant Just-Mark Construction Co. is denied.