606 A.2d 916

Dorothy L. DUDLEY, Administratrix of the Estate
of Orlando A. Dudley, Deceased, on Behalf of
Estate of Orlando A. Dudley, Deceased,

v.

USX CORPORATION

v.

Alfonzo DUDLEY, an Individual, Josh Steel Company, a
Corporation, B. Zeff Company, Inc., a Corporation, and
Isadore Joshowitz and Bennet S. Zeff, Individuals.

Appeal of Dorothy L. DUDLEY, Administratrix of the
Estate of Orlando A. Dudley, Deceased, Appellant.

Dorothy L. DUDLEY, Administratrix of the Estate of Orlando
A. Dudley, Deceased, on Behalf of the Estate of Orlando
A. Dudley, Deceased, Appellant,

v.

USX CORPORATION

v.

Alfonzo DUDLEY, an Individual, Josh Steel Company, a
Corporation, B. Zeff Company, Inc., a Corporation, and
Isadore Joshowitz and Bennet S. Zeff, Individuals.

Superior Court of Pennsylvania.

Argued April 16, 1991.

Filed March 4, 1992.

Reargument Denied May 12, 1992.

Samual J. Cordes, Pittsburgh and Michael A. Murphy, Pittsburgh, for appellant.

David A. Luptak, Pittsburgh, for USC Corp., appellee. Shelley B. Campbell, Pittsburgh, for Josh Steel, Joshowitz & Zeff, appellees (at 1218) and for Josh Steel & Joshowitz, appellees (1219).

Before McEWEN, DEL SOLE and FORD ELLIOTT, JJ.

FORD ELLIOTT, Judge:

This is an appeal from the June 12, 1990 and June 26, 1990 orders of the Court of Common Pleas of Allegheny County, granting summary judgment to defendant, USX Corporation, and additional defendants, Josh Steel Company, B. Zeff Company, Inc., Isadore Joshowitz, and Bennett S. Zeff. We affirm.

Orlando A. Dudley, a 16 year old, was electrocuted while attempting to steal copper cable from a tower in USX's Carrie Furnace Plant in Rankin Borough, Allegheny County. Dorothy L. Dudley, administratrix of the estate of Orlando Dudley, filed suit against USX alleging negligence in the maintenance and security of its Carrie Plant property. USX joined Josh Steel Company and B. Zeff Company, Inc., both scrap dealers, as additional defendants, alleging that they encouraged this theft by the purchase of stolen copper cable at various times prior to this incident. Both of the decedents' parents were later joined as additional defendants on a theory of negligent parental supervision.

The pleadings and discovery in this case reveal that Orlando Dudley, along with two companions, entered the Carrie Furnace Plant facility on October 4, 1986, for the express purpose of stealing copper cable from the plant. Upon entering the plant, Orlando Dudley and his two companions proceeded to a tower from which was strung copper lines. The base of the tower was enclosed with a circular grate welded onto the tower so as to prevent unauthorized access to the tower's ladder. One of the three trespassers used a mallet to break off the circular grate. After the grate was broken, all three climbed to a ledge on the tower at a height of approximately 138 feet. When Orlando Dudley touched an energized transmission cable with his hacksaw, he was electrocuted.

The Carrie Furnace facility had been idle for several years prior to this incident. However, one power plant within the facility remained operational in order to generate electricity for the Homestead Works; another USX facility located across the river from the Carrie Furnace facility.

USX had barricaded the tunnel entrances to the Carrie Furnace facility by filling the tunnels with tons of slag, rocks, and railroad ties. A fence was erected at the main gate of the facility to prevent unauthorized access. USX had erected "No Trespassing" signs around the perimeter of the facility, and several "Danger—High Voltage" signs within the facility. A private security firm had been retained to patrol the facility and apprehend trespassers.

In fact, Orlando Dudley had been confronted by the security officers, plant officers, and local police officials about trespassing on the property, prior to the October 1986 incident. One of Mr. Dudley's companions testified as to the stepped up security efforts in the months preceding the accident. Another companion testified that he understood that the steel grate was welded to the bottom of the tower to prevent access to the ladder and that he had warned Mr. Dudley that he did not believe it would be safe to climb the ladder to the tower.

Following discovery, the trial court granted USX's motion for summary judgment on the basis that the facts of record establish that Mr. Dudley's death was not the result of any culpable conduct on the part of USX, because USX did not engage in any wanton or willful misconduct. Similarly, the trial court also granted additional defendants' motions for summary judgment concluding that the evidence failed to establish liability under the proposed theories. Appellant has filed this timely appeal from the orders granting the various summary judgment motions.

Appellant raises three issues for our consideration.

 I. Whether the trial court erred in granting summary judgment to USX Corporation?

 II. Whether the trial court erred in granting summary judgment to additional defendants, scrap dealers Josh Steel Co. and B. Zeff Company?

 III. Whether the trial court erred in granting summary judgment to the principal officers of the scrap dealers, Isadore Joshowitz and Bennett S. Zeff?

Prior to addressing the merits of the issues presented for our review, it is necessary first to consider the propriety of the trial court's disposition of the summary judgment motions in light of the *Nanty–Glo* rule. Appellant, citing to *Curran v. Philadelphia Newspapers,* 497 Pa. 163, 439 A.2d 652 (1982), presented a *Nanty–Glo* issue when arguing that the trial court improperly usurped the role of the jury by passing on the credibility of the moving party's witnesses in granting the various summary judgment motions. In granting the summary judgment motions, the trial court relied upon the pleadings, admissions, depositions of USX personnel and decedent's co-trespassers, and the answers to interrogatories supplied by USX personnel and the co-trespassers along with accompanying documents. Recent decisions of this court, interpreting the *Nanty–Glo* rule, have held that the party moving for summary judgment may not rely solely upon its own testimonial affidavits or depositions, or those of its witnesses, to establish the non-existence of genuine issues of material fact.

*See Garcia v. Savage*, 402 Pa.Super. 324, 586 A.2d 1375 (1991).[1] At first glance, applying recent decisions of this court, it would appear that the trial court violated the *Nanty–Glo* rule when deciding the various summary judgment motions. However, upon closer scrutiny, we find no application of the *Nanty–Glo* rule to the circumstances of this case.

Any analysis of the *Nanty–Glo* rule must necessarily start with the case giving birth to the rule, *Nanty–Glo v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932). *Nanty–Glo* involved an assumpsit action by the Borough of Nanty–Glo against American Surety Company, which held a bond on the borough tax collector, Benjamin Estep. An audit of the borough records for the year 1922 revealed that Estep was short in his tax accounts by $4,743.09. The borough filed suit against American Surety to recover that amount under the official bond held on Mr. Estep. At trial, the borough produced two witnesses to testify as to material facts necessary for the borough to make out its case. Estep testified that the money he had collected in his official capacity as tax collector, but failed to turn over to the borough, was used for his own purposes. Carlisle, a borough clerk, testified that he sent a letter to American Surety notifying them of the shortage, four days after council received the audit report indicating the shortage. Those two facts, the improper use of the money by Estep and the timely notification to American Surety, had to be established in order for the borough to recover under the terms of the bond.

American Surety offered no evidence to contradict the testimony of those witnesses. At the conclusion of all testimony, the trial judge granted the borough's motion for

---

1. For other recent appellate cases offering interpretations of the *Nanty–Glo* rule, *see Penn Center House, Inc. v. Hoffman*, 520 Pa. 171, 553 A.2d 900 (1989); *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979); *Johnson v. Johnson*, 410 Pa.Super. 631, 600 A.2d 965 (1991); *Larsen v. Philadelphia Newspapers, et al.*, 411 Pa.Super. 534, 602 A.2d 324 (1991); *Troy v. Kampgrounds of America, Inc.*, 399 Pa.Super. 41, 581 A.2d 665 (1990).

binding instructions and directed a verdict in its favor. American Surety appealed, arguing that the trial court erred in directing a verdict for the plaintiff because it took from the jury the opportunity to pass upon the truth of the oral testimony setting forth matters essential to plaintiff's recovery. In announcing its decision, the court quoted language from the case of *Reel v. Elder*, 62 Pa. 308, 316 (1869), which has subsequently become the oft-cited language when referencing *Nanty–Glo*.

> However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence.

*Nanty–Glo*, 309 Pa. at 238, 163 A. at 524.

From 1932, when the *Nanty–Glo* decision was handed down, until 1970, the courts consistently applied *Nanty–Glo* to situations involving binding instructions and directed verdicts. The rule has been uniformly held to provide that binding instructions and a directed verdict are not proper when the moving party relies solely upon oral testimony to *prove* facts necessary to make a *prima facie* case.

In 1970, the *Nanty–Glo* rule was first applied in a summary judgment setting in the case of *Bremmer v. Protected Home Mutual Life Ins. Co.*, 436 Pa. 494, 260 A.2d 785 (1970). *Bremmer* involved an action to recover proceeds under a policy of life insurance. A key element necessary to a successful recovery by Mrs. Bremmer was whether her husband answered questions truthfully on the insurance application. The issue of the truthfulness of these answers became a material factual dispute in the case. Relying only upon the deposition testimony of two doctors whom the insured had visited prior to applying for the insurance, the company moved for summary judgment arguing that the doctors' testimony conclusively established that the insured had given false statements to the company. On appeal, the

supreme court concluded that the trial court had erred in granting summary judgment since the moving party had relied exclusively upon oral testimony to resolve disputed issues of fact.

> Herein, the determination of whether or not the insured gave false and fraudulent statements depends upon a consideration of the testimony of Dr. Hipps and Dr. D'Angelo. This testimony was oral.... [I]t has long been the rule in Pennsylvania that where the testimony of the party having the burden of proof is oral, the credibility of that testimony is always for the jury.

*Bremmer*, 436 Pa. at 498, 260 A.2d at 787 (citations omitted). The key to the holding in *Bremmer* is that the plaintiff had alleged facts which, if true, would have established a *prima facie* case under the appropriate cause of action. However, there was a dispute between the parties regarding some of the material facts; facts which impacted directly on the resolution of the case. The trial court erroneously tried to resolve those factual disputes by deferring to the oral testimony of the moving party's witnesses. The trial court was violating the rule laid down in *Nanty–Glo* in that it was taking from the province of the jury the role of evaluating the credibility of witnesses, in particular, as it relates to issues of fact germane to the disposition of the case.

Since *Bremmer*, there have been numerous cases addressing the *Nanty–Glo* doctrine in the context of summary judgments. *See, e.g., Penn Center House, Inc. v. Hoffman, supra; Thompson Coal Co. v. Pike Coal Co., supra; Johnson v. Johnson, supra; Garcia v. Savage, supra; Troy v. Kampgrounds of America, Inc., supra.* A review of these cases demonstrates that there is an inherent three-step process involved in determining whether the *Nanty–Glo* rule applies so as to preclude a grant of summary judgment. Initially, it must be determined whether the plaintiff has alleged facts sufficient to establish a *prima facie* case. If so, the second step is to determine whether there is any discrepancy as to any facts material to the case. Finally, it must be determined whether, in grant-

ing summary judgment, the trial court has usurped improperly the role of the jury by resolving any material issues of fact.

It is only when the third stage is reached that *Nanty–Glo* comes into play. Thus, it is true that *Nanty–Glo* precludes summary judgment where the moving party relies solely upon testimonial affidavits and depositions of his witnesses to resolve material issues of fact. However, if there are no material issues of fact, or if the non-moving party has failed, in the first instance, to allege facts sufficient to make out a *prima facie* case, then summary judgment may be granted properly, even if the moving party has only set forth the pleadings and depositions of his witnesses in support thereof. Hence the language of Pa. R.C.P. 1035, which provides that "[a]fter the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings and *any* depositions, answers to interrogatories, admissions on file and supporting affidavits." Pa.R.C.P. No. 1035(a). Error only occurs if the moving party, in relying upon the testimonial affidavits of his witnesses, is attempting to resolve a material issue of fact, or more importantly, is attempting to demonstrate the lack of any material issues of fact by asserting that the testimony of his witnesses is uncontradicted.[2]

If there are no material issues of fact in dispute, and plaintiff has failed to allege facts sufficient to make out a *prima facie* case, as a matter of law, then summary judgment may be granted properly. Such was the result reached by our supreme court in *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). When

**2.** The *Nanty–Glo* rule becomes all the more important when considering that under Rule 1035, the non-moving party is not required to respond to the summary judgment motion or to file counter-affidavits. *See O'Neill v. Checker Motors Corp.*, 389 Pa.Super. 430, 567 A.2d 680 (1989); *Wright v. North American Life Assur. Co.*, 372 Pa.Super. 272, 539 A.2d 434 (1988). Thus, when the moving party files his or her motion and supports the same with testimonial affidavits, it may often appear, perhaps mistakenly, that there are no issues of fact.

confronted with appellant's argument that the trial court erred in granting summary judgment, in light of *Bremmer, supra,* and *Nanty-Glo, supra,* the court concluded:

> We have no credibility issue here. Assuming everything that appellants argue is accepted as pristine truth, appellants fail to make out a prima facie case *as a matter of law,* not as a matter of fact.

*Thompson Coal Co.,* 488 Pa. at 213-14, 412 A.2d at 474.

The same result can and should be reached in the present case. Returning to the three-step approach, outlined previously, when addressing *Nanty-Glo* issues; we are presently at the first step in that process. Did the plaintiff allege facts, which if proven to be true, would make out a *prima facie* case as a matter of law? Appellant fails at this first level. Even assuming everything alleged by appellant in the pleadings as true, and giving appellant the benefit of all reasonable inferences to be drawn from these alleged facts, appellant has failed to establish a *prima facie* case, as a matter of law. There are no credibility issues to be decided at this stage, hence, *Nanty-Glo* should not be a consideration.

Reviewing only the pleadings and appellant's own response to the summary judgment motion, in a light most favorable to appellant, reveals the following facts. USX had an operational electric tower in an otherwise non-operational plant. USX owned this property and had every right to have this tower operational. The decedent, Orlando Dudley, along with two companions, entered onto USX property, without authorization, for the purpose of stealing copper cable. Upon entering the USX facility through a tunnel leading into the mill, the three trespassers decided to climb one of the electric transmission towers to steal copper cable. The tower's ladder was surrounded by a circular steel "guard" which USX personnel had welded to the ladder to prevent unauthorized persons from climbing the ladder. Dudley and his companions broke the steel guard off the ladder by smashing it with a mallet. After removing the protective guard, Dudley and his companions pro-

ceeded to climb the 140–foot tower. Upon reaching the platform, Dudley contacted an energized wire with the blade of a hacksaw and was electrocuted. The wire was energized in order to supply power to a pump house at USX's Homestead Works. Orlando Dudley died as a result of the electrocution.

These facts are all established in the complaint and the responses in opposition to the various summary judgment motions. These are facts which are not in dispute, and which the trial court could properly consider without violating the *Nanty–Glo* rule. Reviewing these facts, the trial court could correctly conclude that appellants failed to plead facts sufficient to make out a *prima facie* case against USX or the additional defendants, and that, as a matter of law, USX and the additional defendants were entitled to summary judgment.[3]

**3.** Contrast this case with one in which *Nanty–Glo* was properly considered and the differences are striking. Take, for example, the case of *Garcia v. Savage, supra.* Without delving too deeply into the facts, *Garcia* involved an action by the employee of one subcontractor against another subcontractor whose employees' negligence allegedly caused his injuries. At the initial level, there were no fatal deficiencies in Garcia's theory of liability against Savage, the second subcontractor. Garcia alleged facts which, if proven, would establish a *prima facie* case of negligence against Savage under a theory of vicarious liability for the negligent acts of its employees. At the next level, however, it is clear that certain facts, material to the resolution of the case, were at issue.

In particular, an issue arose as to whose control the three workers were under at the time of the accident. Garcia alleged that they were under Savage's control, making it liable under a theory of respondent superior. Savage alleged that the employees were under the control of the general contractor. Savage moved for summary judgment and supported the motion with deposition testimony of the workers themselves and the general contractor, to the effect that the workers were under the control of the general contractor when the accident occurred. The trial court granted the summary judgment motion of Savage.

On appeal, this court reversed, reasoning that *Nanty–Glo* precluded the grant of summary judgment. In this case, an analysis of *Nanty–Glo* was warranted and correct. As previously stated, Garcia's theory of liability was not fatally deficient, as in the present case, and there was a genuine issue of material fact surrounding the control of the workers. Yet, Savage attempted to resolve that issue of fact by relying

■■■ The decedent, Orlando Dudley, was, without a doubt, a trespasser on USX's property. That fact is admitted by appellant in her pleadings. The standard of care owed to trespassers on land has been defined by our supreme court to be the avoidance of willful *or* wanton misconduct. *Evans v. Philadelphia Transportation Co.,* 418 Pa. 567, 212 A.2d 440 (1965). Willful misconduct is conduct of such a nature that the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow. Wanton misconduct refers to conduct wherein the actor intentionally performs an act of an unreasonable character in disregard to a risk known to him or so obvious that he must be taken to have been aware of it and so great as to make it highly probable that harm would follow. *Id.* Wanton misconduct is ordinarily accompanied by a conscious indifference to the consequences and only exists where the danger to plaintiff is realized and is so recklessly disregarded that there is at least a willingness to inflict injury, if not the actual intent to do same.

■■ It is clearly within the province of the trial court to grant summary judgment when there are fatal deficiencies in the allegations of the complaint as to the theory of liability upon which the plaintiff is attempting to proceed. *See Johnson v. Johnson,* 410 Pa.Super. 631, 600 A.2d 965 (1991) (this court affirmed grant of summary judgment where plaintiff failed to allege facts sufficient to establish a *prima facie* case under proposed theories of liability); *Eckenrod v. GAF Corp.,* 375 Pa.Super. 187, 544 A.2d 50 (1988).

Appellant failed to allege facts which, even if true, would establish that USX's behavior was of a wanton or willful nature. Absent such factual allegations of willfulness or wantonness, appellant was unable to make out a *prima facie* case against USX. Thus, the trial court was correct in granting USX's motion for summary judgment, for while the question of whether possessors of land violated the

upon the deposition testimony of the workers and the general contractor.

standard of care to one who enters upon their land is normally a question of fact for the jury, the question may be decided by the courts where reasonable minds could not differ as to the conclusion. *See Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983).

Appellant's second issue focuses on whether the trial court erred in granting summary judgment to additional defendants, Josh Steel Co. and B. Zeff Company, Inc. According to appellant, since these appellees knowingly purchased stolen copper, they were encouraging trespassers such as Mr. Dudley to enter USX's property and risk injury to steal the copper.

With respect to the grant of summary judgment in favor of these additional defendants, appellant has again raised a *Nanty–Glo* argument. Appellant claims that summary judgment was improperly granted because the additional defendants relied upon their own testimony, or that of their witness to support the motion. However, as set out earlier, a *Nanty–Glo* analysis necessarily requires initially determining whether the complaint against the additional defendants alleged facts sufficient to establish a *prima facie* case of negligence against these parties. Again, as with the allegations against USX, the allegations against the additional defendants are fatally flawed.

█ The three elements of a claim of negligence, as was raised against the additional defendants, include proof of a duty of care owed to plaintiff; breach of that duty by defendant; and injuries which were proximately caused by the breach. *Zanine v. Gallagher*, 345 Pa.Super. 119, 497 A.2d 1332 (1985). Assuming that the allegations in the complaint against the additional defendants are true, and these parties did knowingly purchase stolen copper cable from Mr. Dudley and his companions; the complaint is still flawed in that there are no factual allegations to support the elements of duty and causation.

As a general rule the scope of duty any one person owes to another is limited to those risks that are reasonably

foreseeable by the actor in the circumstances of the case. *Zanine, supra.* That general duty is only modified when a special relationship exists between the parties, such as landowner and invitee. No such special relationship existed between the additional defendants and Mr. Dudley, therefore, the scope of their duty was limited to those risks which were *reasonably* foreseeable. As this court has noted, "[w]ant of ordinary care consists in failure to anticipate what is reasonably probable—not what is remotely possible." *Mathis v. United Engineers & Contractors, Inc.,* 381 Pa.Super. 466, 554 A.2d 96, 100 (1989).

Clearly, the facts developed only from the pleadings in this case reveal that the harm which befell Mr. Dudley was not reasonably foreseeable to appellees, even if they were knowingly purchasing stolen copper wire from Mr. Dudley. It is hardly reasonable to foresee that Mr. Dudley would forcibly remove a metal barricade from the base of a tower, ascend the tower, and attempt to cut an energized line with a hacksaw. While this court may consider the alleged conduct of these additional defendants to be reprehensible, the acts of purchasing the copper wire are too far removed from the reckless acts of Mr. Dudley to hold that these additional defendants owed Mr. Dudley a duty to protect him from this harm which occurred.

■ Similarly, these are insufficient allegations to establish proximate causation. Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm. *Whitner v. Lojeski,* 437 Pa. 448, 458, 263 A.2d 889, 894 (1970), *citing* Restatement (Second) of Torts, § 431 (1965). Proximate cause does not exist where the causal chain of events resulting in plaintiff's injury is so remote as to appear highly extraordinary that the conduct could have brought about the harm. *See Brown v. Tinneny,* 280 Pa.Super. 512, 421 A.2d 839 (1980). In the present case, the causal chain of events leading up to Mr. Dudley's death is too remote to conclude that the alleged actions of these additional defendants were a *substantial* factor in bringing about Mr. Dudley's death.

Thus, as we concluded with respect to USX's motion for summary judgment, the trial court did not err in granting summary judgment in favor of the additional defendants.

 Finally, appellant questions whether the trial court erred in granting summary judgment in favor of Isadore Joshowitz and Bennett S. Zeff, the individual owners of the additional defendant corporations. An officer of a corporation can only be held personally liable for the tort of the corporation if he participated in the tort. *Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 470 A.2d 86 (1983). As we have already concluded that the respective corporate defendants have not committed any torts, then it necessarily follows that neither did the officers of those corporations. Thus, we conclude that the trial court did not err in granting summary judgment in favor of Isadore Joshowitz and Bennett S. Zeff.

For the foregoing reasons, we hold that the trial court's orders of June 16 and June 26, 1990, were correct.

Orders and judgments affirmed. Jurisdiction relinquished.