610 A.2d 474

Stanley J. MATUSKY, an Individual; Carolyn Suzanne Matusky, an Individual; and Stanley J. Matusky and Carolyn Suzanne Matusky, as husband and wife, Appellants,

v.

HAUGH'S POOLS, a Foreign Corporation; Clover Pool Supply Co., Inc., a Corporation and Allen Pool Sales & Service

v.

Daniel FRANTZ and Karen Frantz, his wife; Phillip P. Angeletti, Swimline Corporation and Mengo Industries, Inc., a Corporation (Five Cases).

Appeal of ALLEN POOL SALES & SERVICE.

Appeal of CLOVER POOL SUPPLY CO., INC., a Corporation.

Appeal of SWIMLINE CORPORATION.

Appeal of HAUGH'S POOLS, a Foreign Corporation.

Superior Court of Pennsylvania.

Argued April 22, 1992.

Filed June 9, 1992.

Reargument Denied Aug. 13, 1992.

Nicholas F. Lorenzo, Jr., Punxsutawney, for Matusky, appellants (at 1059) and appellees (at 1649, 1650, 1669, and 1819).

Timothy D. Appelbe, Pittsburgh, for Clover Pool Supply, appellant (at 1650) and appellee (at 1059, 1649, 1669, and 1819).

Before TAMILIA, HUDOCK and HESTER, JJ.

HESTER, Judge.

This is a consolidated appeal from two summary judgment orders entered in this civil action. Based on our recent decision in *Mucowski v. Clark*, 404 Pa.Super. 197, 590 A.2d 348 (1991), we affirm the trial court's determina-

tion that Stanley Matusky's conduct was the legal cause of the injuries he sustained when he dove headfirst into his neighbor's above-ground swimming pool. Accordingly, we affirm the summary judgment orders entered in this action.

This matter arises from an incident which occurred June 8, 1987. Stanley Matusky, who was thirty-seven years old at the time, was rendered a quadriplegic when he dove headfirst into and struck the bottom of a four-foot deep above-ground swimming pool. Mr. Matusky, and Carolyn, his wife, instituted this action on March 13, 1989, against Haugh's Pools ("Haugh's"), Clover Pool Supply Co., Inc. ("Clover"), and Allen Pool Sales & Service, Inc. ("Allen"). The pool was manufactured by Haugh's, distributed by Clover, and sold by Allen. These original defendants joined the owners of the pool and the Matuskys' neighbors, Daniel and Karen Frantz, as well as Phillip P. Angeletti ("Angeletti"), Swimline Corporation ("Swimline"), and Mengo Industries, Inc. ("Mengo"). Swimline manufactured the pool liner in place at the time of the accident, Mengo manufactured the pool ladder, and Angeletti installed the deck adjacent to the pool.

Mr. Matusky testified as follows at his deposition taken on October 30, 1989. The accident occurred when he dove from the top step of the pool ladder. Reproduced Record at 503a. The ladder was submerged partially in the water. He dove from the step headfirst through a truck inner tube that was located approximately four feet in front of him. *Id.* at 504a. The outside diameter of the inner tube was four feet. He had made the same dive through the inner tube on at least five prior occasions without incident. He was aware of the water level of the pool, just above his waist, when he made the dive. *Id.* at 497a.

Mr. Matusky used the Frantzes' pool frequently, going there as often as ten to twenty times a year during the five years preceding the accident. Mr. Matusky learned to swim when he was ten or eleven years old, how to dive within a year or two after he learned to swim, and he knew that when diving into a shallow area as opposed to a deep area,

the trajectory of his dive had to change in order to avoid hitting the bottom of the area.

Based on the deposition testimony of Mr. Matusky, the trial court determined that Mr. Matusky was aware that it was necessary to perform a flat surface dive in shallow water to avoid impact on the bottom of a pool, and that, therefore, Mr. Matusky was aware of and assumed the risk of the injuries he sustained when he made a deep, headfirst dive into three-to-four-feet deep water through an inner tube from the top rung of a ladder leading from the pool. Based on this factual determination, the trial court concluded that Mr. Matusky's conduct was the legal and sole cause of his injuries.

On May 21, 1991, the trial court granted summary judgment to Haugh's, Clover, Allen and Swimline. Those four defendants are appellees at docket number 1059 Pittsburgh 1991. On August 14, 1991, the trial court granted summary judgment to the additional defendants Angeletti and Mengo. For the purpose of preserving cross-claims against these additional defendants, Clover (at docket number 1650 Pittsburgh 1991), Allen (at docket number 1649 Pittsburgh, 1991), Swimline (at docket number 1669 Pittsburgh, 1991) and Haugh's (at docket number 1819 Pittsburgh, 1991) took cautionary appeals from the August 14, 1991 grants of summary judgment in favor of Angeletti and Mengo. All of these appeals were consolidated for our review.

Our standard of review of an order granting summary judgment is well-settled:

As an appellate court, we are bound to consider certain principles which dictate when and under what circumstances a trial court may properly enter summary judgment. *Goebert v. Ondek*, 384 Pa.Super. 100, 103–04, 557 A.2d 1064, 1066 (1989). The trial court must accept as true all well-pleaded facts in the non-moving party's pleadings, and give to him or her the benefit of all reasonable inferences to be drawn therefrom. *Jefferson v. State Farm Insurance*, 380 Pa.Super. 167, 170, 551 A.2d 283, 284 (1988). Summary judgment should not be

entered unless the case is clear and free from doubt. *Hathi v. Krewstown Park Apartments,* 385 Pa.Super. 613, 615, 561 A.2d 1261, 1262 (1989). A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories and admissions on file support the lower court's conclusion that no genuine issue of material fact exists and that the moving party is entitled to judgment as matter of law. Pa.R.C.P. No. 1035, ... *Hatter v. Landsberg,* 386 Pa.Super. 438, 440, 563 A.2d 146, 147–48 (1989). *See Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 176, 553 A.2d 900, 903 (1989) (entire record before lower court must be thoroughly examined and all doubts as to the existence of a genuine issue of material fact are to be resolved against a grant of summary judgment). We will overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *McCain v. Pennbank,* 379 Pa.Super. 313, 318, 549 A.2d 1311, 1313 (1988).

*Wilkinson v. K–Mart,* 412 Pa.Super. 434, 436–37, 603 A.2d 659, 660 (1992), quoting *O'Neill v. Checker Motors Corp.,* 389 Pa.Super. 430, 434–35, 567 A.2d 680, 682 (1989).[1]

We conclude that the trial court properly granted summary judgment under our recent pronouncement in *Mucowski v. Clark, supra.* In that case, the plaintiff injured himself by diving into an above-ground swimming pool and instituted an action against the owners, distributors, and manufacturer of the pool. We affirmed the trial court's grant of summary judgment against the plaintiff.

In *Mucowski,* the pool was four feet deep and not filled to capacity at the time of the accident. The owners had constructed a platform around the pool rim so that children could sit on the platform and dip their feet into the water.

---

**1.** We note that since the moving parties relied solely upon the testimony of the plaintiff in establishing their entitlement to summary judgment and they did not rely upon the testimony of any other witnesses, the rule announced in *Nanty–Glo v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932), is not violated by the decision herein. *See Dudley v. USX Corp.,* 414 Pa.Super. 160, 606 A.2d 916 (1992).

They also erected a railing to prevent falls from the platform. Mucowski was twenty-one at the time of the accident. He was familiar with the pool and had used it on prior occasions. He also had dived or jumped into the pool from the platform on prior occasions and knew that the water reached a point between his navel and chest. He then decided to dive from the railing surrounding the platform, struck his head on the bottom of the pool, and sustained serious injuries.

We held that under the circumstances presented in that case, plaintiff could not recover for his injuries against the manufacturer and distributor of the pool. Relying upon persuasive case law from other jurisdictions, we determined that since the plaintiff knew the depth of the water and knew the risk inherent in performing the dive, his own conduct was the legal cause of his injuries and not the absence of warnings regarding diving or the allegedly dangerous condition of the pool.

The reasoning in *Mucowski* controls the disposition of the case herein. The following determinative factors applied in *Mucowski* are all present in this case: 1) the pool was four feet deep; 2) plaintiff was familiar with the pool and used it on prior occasions; 3) plaintiff was aware of the depth of the water on the day of the accident; 4) the depth of the water at the time of the dive was between the plaintiff's navel and waist.

While the nature of the two dives are not precisely the same, they are strikingly similar. The plaintiff in *Mucowski* dove from a greater height but not at such a deep target. Here, Mr. Matusky dove deep into the pool from the top rung of a ladder down through the inner tube. Furthermore, Mr. Matusky admitted that he was an experienced swimmer and knew the difference between shallow and deep water dives.

Thus, based on *Mucowski*, the trial court properly found that Mr. Matusky's own conduct was the legal cause of his injuries and not appellees failure to warn of the obvious danger of making such a deep angled dive into shallow

water. *See also Dudley v. USX Corp.*, 414 Pa.Super. 160, 606 A.2d 916 (1992), where we denied recovery to a plaintiff injured when stealing copper wire by climbing a tower and cutting an energized line with a hacksaw. At issue was the liability of individuals and corporations who purchased copper wire from the plaintiff on prior occasions with knowledge that it was stolen. We noted that one owes a duty to another to protect only against risks that are reasonably foreseeable. We held that it was not reasonably foreseeable that a person would attempt to steal copper wire by climbing a tower and cutting an energized copper line with a hacksaw. We held that under those circumstances, plaintiff's conduct of cutting the live wire and not defendants' conduct of knowingly purchasing stolen wire, was the legal cause of the injuries sustained.

Orders affirmed.