## Allstate Insurance Co. v. Seelye

C.P. of Fayette County, no. 1851 of 2002, G.D.

*David J. Obermeier,* for plaintiff.
*John M. Purcell,* for defendants.

LESKINEN, *J.,* May 19, 2003—Before this court is a motion for summary judgment filed by plaintiff, Allstate Insurance Company, and a cross-motion for summary judgment filed by defendants, Mary S. Seelye and Gary C. Seelye, individually and as parents and natural guardians of Nathan Seelye.

After full consideration of the record, applicable law, briefs and arguments of counsel, this court finds that the rejection form used by plaintiff was not in compliance with 75 Pa.C.S. §1738, and is void; therefore this court denies plaintiff's motion for summary judgment, and grants defendants' cross-motion for summary judgment.

## BACKGROUND

On April 18, 1997, Nathan was a passenger in a vehicle driven by Mary that was involved in a motor vehicle accident with an uninsured motorist. Because of

this collision, Nathan sustained serious and permanent injuries and incurred medical bills in excess of $600,000. At the time of the collision, Mary and Gary maintained a motor vehicle insurance policy with Allstate. The policy afforded uninsured motorist coverage in the amount of $50,000 per person and $100,000 per accident. The defendants insured three cars under this policy at the time of the collision; however, Allstate claims defendants rejected stacking of uninsured motorist coverage limits by signing a rejection form. As a result of the collision and due to the fact that the other driver was uninsured, defendants made a claim for uninsured motorist coverage to Allstate, and Allstate tendered the amount of $50,000 to Mary and $50,000 to Nathan,

On February 5, 2003, plaintiff filed the instant motion for summary judgment to confirm the validity of the rejection form and preclude all further claims by defendants for "stacked" uninsured motorist benefits. On March 10, 2003, defendants filed the instant cross-motion for summary judgment to establish that the rejection form was invalid and that they are entitled to "stacking" under the policy.

## DISCUSSION

The purpose of the summary judgment rule is to eliminate cases before trial where a party cannot make out a claim or a defense after relevant discovery has been completed. *Miller v. Sacred Heart Hospital,* 753 A.2d 829 (Pa. Super. 2000). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662 (Pa. Super. 2000).

Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Davis v. Resources for Human Development Inc.,* 770 A.2d 353 (Pa. Super. 2001).

If there are no material issues of fact in dispute or if the non-moving party has failed to state a prima facie case, summary judgment may be granted. *Dudley v. USX Corporation,* 414 Pa. Super. 160, 606 A.2d 916 (1992), *allocatur denied,* 532 Pa. 663, 616 A.2d 985 (1992). Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. *Rauch v. Mike-Mayer,* 783 A.2d 815 (Pa. Super. 2001), *allocatur denied,* 568 Pa. 624, 793 A.2d 909 (2002).

The trial court must confine its inquiry when confronted with a motion for summary judgment to the question of whether or not a material factual dispute exists. *Township of Bensalem v. Moore,* 152 Pa. Commw. 540, 620 A.2d 76 (1993). It is not the function of the court ruling on motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Commonwealth of Pennsylvania,* 134 Pa. Commw. 494, 579 A.2d 1358 (1990). For summary judgment purposes, a material fact is one that directly affects the outcome of

the case. *Kuney v. Benjamin Franklin Clinic,* 751 A.2d 662 (Pa. Super. 2000). "Thus, the over-all purpose of a motion for summary judgment is to dispose of those cases in which there exists no factual issue to be decided at trial." *Harris v. Hanberry,* 149 Pa. Commw. 300, 302, 613 A.2d 101, 102 (1992).

The sole issue before this court is whether the 1990 rejection form signed by Gary, as the first named insured, is a valid waiver of "stacking" of uninsured motorist coverage.

"Stacking" is a term of art in the insurance business, which is defined as the ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage than is available under any one vehicle or policy. *McGovern v. Erie Insurance Group,* 796 A.2d 343 (Pa. Super. 2002).

Section 1738 of the Vehicle Code provides for the availability of stacking of uninsured and underinsured benefits and the procedure and form used to waive stacking of said benefits. The case at bar deals with uninsured coverage only; and section 1738 states in pertinent part:

*"Section 1738. Stacking of uninsured and underinsured benefits and option to waive*

*"(a) Limit for each vehicle.*—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

134

*"(b) Waiver.*—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

*"(c) More than one vehicle.*—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

*"(d) Forms.*—

"(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:

"Uninsured Coverage Limits

"By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

"Signature of First Named Insured

"Date

"(2) . . . .

"*(e) Signature and date.*—The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void." 75 Pa.C.S. §1738.

The rejection form in the case at bar contains the identical paragraph as the form set forth in section 1738 (d)(1); however, the caption reads "*Rejection of Stacked* Uninsured Coverage Limits." (emphasis supplied)

Plaintiff argues that the additional language in the caption clarifies the purpose of the form, that the additional language has been approved by the insurance commissioner, and that the modified form has been used thousands of times by several different insurers. Plaintiff has cited no case that supports its argument.

Defendants argue that the rejection form is not the form set forth in the statute; that the form therefore does not comply with section 1738; and that, in accordance with section 1738(e), the form is therefore void. In support of their argument, defendants cite the case of *Friel v. Prudential Property and Casualty Insurance Co.,* 42 D.&C.4th 221 (1999). In *Friel,* the Court of Common Pleas of Bucks County held, on identical relevant facts, that a signed waiver of stacked underinsured motorist coverage limits was invalid where the written rejection form failed to use the exact title required by section 1738.

The court in *Friel* cited the Superior Court's decision in *Winslow-Quattlebaum v. Maryland Casualty Company,* 723 A.2d 681 (Pa. Super. 1999), however, and, as

plaintiff notes in its brief to this court, the Pennsylvania Supreme Court has reversed that decision, 561 Pa. 629, 752 A.2d 878 (2000). Unlike the case at bar, *Winslow-Quattlebaum* revolved around the rejection of underinsured motorist benefits under section 1731 of the MVFRL.[1] In *Winslow-Quattlebaum*, an insured brought action to recover underinsured motorist benefits despite signing a rejection form. 75 Pa.C.S. §1731 (c.1) states that: "Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location." The insured argued that the rejection form was void because the rejection form for underinsured motorist coverage was not presented on a "separate" sheet, but was on the same sheet as the rejection form for *stacking* of underinsured motorists coverages. The trial court ruled for the insurer, the Superior Court reversed, and the Supreme Court reinstated the trial court's decision. The Supreme Court held that section 1731(c.1) only required that the rejection form set forth in section 7311(b.1) for *uninsured* motorist coverage appear on a sheet "separate" from the rejection form set forth in section 7311(c) for *underinsured* motorist coverage. Therefore, the rejection form in question in *Winslow-Quattlebaum* was in compliance with section 1731(c.1).

---

1. *Friel* was the only case directly on point with the facts in the case at bar, and this court notes that the majority of case law deals with 75 Pa.C.S §1731, not with 75 Pa.C.S. §1738. This court further notes that the entire MVFRL should be read in pari materia. See *Lucas v. Progressive Casualty Insurance Co.,* 451 Pa. Super. 492, 680 A.2d 873 (1996). "Statutes or parts of statutes are in pari materia, when they relate to the same persons or things or to the same class of persons or things." Section 1 Pa.C.S. 1932(a).

Even though the *Friel* decision cited the overturned *Winslow-Quattlebaum* opinion, however, the reversal does not affect its outcome. In *Winslow-Quattlebaum*, the Supreme Court interpreted the word "separate" to apply only to "the rejection forms required by subsections (b) and (c) . . . ." That specific holding has nothing to do with the additional language that constitutes the defect alleged here and in *Friel*. While the holding in *Friel* is not binding, this court agrees that it was correctly decided.

No court can read the collective mind of the legislature, therefore, judges must follow the established principles of statutory construction. The Supreme Court of Pennsylvania has held that when the language of a statute is clear and unambiguous, its provisions must be read in accordance with their plain meaning and common usage. Only when the statutory language is unclear may the court delve into legislative intent. *Commonwealth v. Lassiter,* 554 Pa. 586, 722 A.2d 657 (1998). The Supreme Court has also noted that the rules of statutory construction require that whenever possible each word in a statutory provision is to be given meaning and is not to be treated as surplusage. *Winslow-Quattlebaum, supra.*

The language in 75 Pa.C.S. §1738 is clear and unambiguous. The statute explains the concept and limitations of "stacking" (section 1738(a)). The statute provides a manner in which the insured may waive the "stacking" of coverages (1738(b) and 1738(c)). Furthermore, the statute explicitly provides the written rejection form to be used to effectuate said waiver of stacking (section 1738(d)), and voids the effect of any form not in compliance (section 1738(e)).

Section 1738 was part of a deliberate effort by the legislature to allow for automobile insurance "cost-containment." The cost of insurance can be reduced if policyholders have the option not to purchase certain coverages and limits that previously were mandatory. Because the general public had settled expectations for the standard content of an automobile insurance policy in Pennsylvania, however, the legislature clearly specified the forms and procedures for waiving various coverages and limits.

It is obvious that the caption "Rejection of Stacked Uninsured Coverage Limits" used by plaintiff on the rejection form differs from the caption of the rejection form set forth in the statute. Plaintiff points out that this difference was approved by the insurance commissioner, that this difference exists on thousands of other signed rejection forms, and that the different language arguably clarifies the purpose of the form.

The approval of the modified form by the department of the executive branch of government that specializes in insurance issues is entitled to careful consideration. However, this court is at a complete loss to understand why the executive branch would approve a form that used different language than the form specifically set forth in the legislation. Why would the executive branch even consider changing punctuation, much less language? If the form specified by the legislature was inadequate, the governor could have vetoed the law, or suggested an amendment. There are areas of the law where the legislature grants the executive branch the authority to promulgate regulations and to "flesh out" laws that are a "skeleton" when passed. This is not such an area. The statute

is clear and complete, and leaves no room for modification by the insurance commissioner or anyone else. By "tinkering" with the language specified by the legislature, the modification of the form destroys the very predictability of outcome that the statute was designed to provide.

The allegation that the non-compliant form is being used by many insurers and has been signed by thousands of policyholders causes this court to hesitate, but ultimately is of no consequence. The votes were counted when the legislation was passed. The fact that many insurance companies, and their attorneys, have disregarded the plain language of the law is no reason to condone that error. If "cost-containment" suffers from the error, it is not the fault of the legislature, and it is not the fault of this court. The statute was passed so that the courts would not have to inquire into what either party intended when the form specified in the statute was signed. The courts cannot listen to the insurers give their interpretation of the modification, without also hearing each individual policyholder give their understanding of it.

Finally, it is not for this court to decide whether the re-captioning of the form clarifies or obfuscates the purpose of the form. That decision was made by the legislature and approved by the governor when the statute was signed into law. The language of the form, including the language of its caption, was specified by the law. The deviation from the language explicitly provided in 75 Pa.C.S. §1738(d)(1) renders the form noncompliant with the statute. The remedy for failure to comply with the form specified by the legislature is clearly set forth in

the same statute. Thus, in accordance with 75 Pa.C.S. §1738(e), the non-compliant rejection form is void.

Wherefore, this court enters the following:

## ORDER

And now, May 19, 2003, upon consideration of the motion for summary judgment filed on behalf of the plaintiff, Allstate Insurance Company, and upon further consideration of applicable law, and the briefs and arguments of counsel, it is hereby ordered and decreed that plaintiff's motion for summary judgment is denied.

## ORDER

And now, May 19, 2003, upon consideration of the cross-motion for summary judgment filed on behalf of defendants, Mary S. Seelye and Gary C. Seelye, individually and as parents and natural guardians of Nathan Seelye; and upon further consideration of applicable law, and the briefs and arguments of counsel, it is hereby ordered and decreed that defendants' cross-motion for summary judgment is granted.