MOTTO, P.J.,
Before the court for disposition is the defendant’s motion for summary j udgment. The plaintiff, engaged in the business of breeding and selling deer, seeks recovery from the defendant for allowing her dog to trespass upon the property of the plaintiff, thereby causing a fawn of plaintiff to run into the fencing and break her neck and die. Defendant’s motion for summary judgment raises the following issues: 1) Should defendant be granted summary judgment because no evidence exists that any conduct of defendant or her dog was the cause of death to plaintiff’s fawn; and 2) Alternatively, should defendant be granted summary judgment under the doctrine of spoilation of evidence, where plaintiff’s agent failed to preserve the remains of *3 the fawn for examination by defendant or an expert on behalf of defendant to determine cause of death.
In its complaint, plaintiff alleges that it conducts the business of breeding and selling deer; that it owned a doe known as “Stryker” alleged to be the deepest DNA deer in whitetail history; that Stiyker and other deer were kept in a self-enclosed area on the business premises of plaintiff; that on or about November 3,2012, Stryker broke her neck from running into the fence which surrounds portions of the business property; that Stryker ran into the fence as the direct and approximate result of an encounter with defendant’s dog, which was trespassing upon plaintiff’s property; that this trespass occurred after defendant was specifically advised by agents of plaintiff that her dog could “spook” the deer owned by plaintiff which could result in death or serious injury to plaintiff’s deer; that “no trespassing” signs had been posted on plaintiff’s property prior to the incident; that defendant admitted to trespassing on plaintiff’s property with her unleashed dog running at large in violation of the Pennsylvania Dog Law; and that as a direct and approximate result of Stryker’s death, plaintiff lost the fair market value of Stryker, appraised at $25,000.00 and that plaintiff has also incurred loss of income in anticipatory breeding fees totaling $75,000.00.
The parties have engaged in discovery, which has included the taking of the depositions of Jason McDowell, the sole shareholder and owner of plaintiff; the defendant, and one Steven Reno, who was present at the time the dog was alleging running along the fence enclosing the deer.
In his deposition, McDowell testified that on the date of the incident he was working at the facility near the deer pens, when he heard the dog barking. (McDowell *4 deposition, p. 35.) All of the deer in the various pens began running around. McDowell’s first fear was that his buck, Axle, may be harmed since that animal is worth in excess of $150,000.00. McDowell saw Axle running up and down the fence, “going crazy,” and also saw plaintiff’s dog running up and down the fence line. (McDowell deposition, p. 37). Defendant was yelling at the dog, which would not listen to her. McDowell kept trying to calm Axle down. The whole pen of deer had erupted but at the time McDowell was worried about Axle because of his value (McDowell deposition, p. 38). After a period of time, the dog returned to the defendant and the deer calmed down. After the dog returned to the defendant, McDowell found Stryker dead in the comer of the pen (McDowell deposition, p. 40). McDowell cut the ear tags off the fawn and dumped the carcass in a dumpster the next day. When McDowell observed the dead deer, blood was coming out of its nose (McDowell deposition, p. 51).
McDowell went to defendant’s residence one half hour to forty-five minutes after the incident to advise defendant that her dog had caused the death of his deer. The remains were disposed of the day after the incident. (McDowell deposition, p. 45).
Steven Reno had come to plaintiff’s property at the time of the incident and observed the dog running along the fence; heard a woman hollering and yelling at the dog, with the running dog and woman screaming lasting for minutes (Reno deposition, p. 19-27). Reno testified that he left because of the “chaos,” but returned the next day and observed the dead deer himself and was told by McDowell that the deer had died at the time of the incident. (Reno deposition, p. 22, 23).
*5 In her deposition, Drotleff testified that she did not use shock collars for her dogs; that she did on occasion permit them to run loose without a leash or a chain; that the dog in question barked a lot, was ‘yappy’ and barked at anything that was different; that she was yelling at the dog running up to plaintiff’s property and that she herself has a very high squeaky voice (Drotleff deposition, p. 8-18, 41). Defendant further admitted that she was aware of at least one prior incident where plaintiff had a deer die as the result of a barking dog and knew that deer get spooked very easily (Drotleff deposition, p. 32-34). Defendant denied that the dog was ever off the property in which she resides, and the dog was not running up and down along the fence barking at the deer (Drotleff deposition, p. 44).
Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. Kafando Erie Ceramic Art Co., 764 A.2d 59, 61 (Pa. Super. 2000)(citing Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648, 650-651 (Pa. Super. 1999). A material fact, for summary judgment purposes, is one that directly effects the outcome of the case. Gerrow v. Shincor Silicones, Inc., 756 A.2d 697 (Pa. Super. 2000).
The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. Miller v. Sacred Heart Hospital, 753 A.2d 829 (Pa. Super. 2000). Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or *6 expert report or if, after completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense, which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2.
When determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Hughes v. Seven Springs Farm, Inc., 563 Pa. 501, 762 A.2d 339 (2000); Dean v. The Commonwealth Department of Transportation, 561 Pa. 503, 751 A.2d 1130 (2000). Summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. P.J.S. v. Pennsylvania State Ethics Commission, 555 Pa. 149, 153, 723 A.2d 174, 175 (1999); Basile v. H & R Block, 761 A.2d 1115 (Pa. Super. 2001); Kuney v. Benjamin Franklin Clinic, 751 A.2d 662 (Pa. Super. 2000); Stevens Painton Corp. v. First State Ins. Co., 746 A.2d 649 (Pa. Super. 2000).
Only when the facts are so clear that reasonable minds cannot differ may a trial court properly enter summary judgment. Basile, Supra. If there are no genuine issues of material fact in dispute or if the non-moving party has failed to state a prima facie case, summary judgment may be granted. Dudley v. U.S.X. Corporation, 414 Pa. Super. 160, 606 A.2d 916 (1992). Thus, a proper grant of *7 summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make a prima facie cause of action or defense. Rauch v. Mike-Mayer, 783 A.2d 815 (Pa. Super. 2001). The trial court must confine its enquiry when confronted with a motion for summary judgment to questions of whether material factual disputes exist. Township of Bensalem v. Moore, 152 Pa.Cmwlth. 540, 620 A.2d 76 (1993). It is not the function of the court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. Keenheel v. Pennsylvania Securities Commission, 134 Pa.Cmwlth. 494, 579 A.2d 1358 (1990).
Defendant first argues that insufficient evidence exists that the actions of defendant in allowing her dog to trespass upon plaintiff’s property caused the death of the fawn Stryker, because all that plaintiff can show is that it found Stryker dead, and no procedure was employed to determine the exact cause of death or to support the contention that Stryker broke its neck on the fence as the result of the disturbance caused by the dog running loose. However, the court here finds that there exists at least circumstantial evidence that Stryker died as the result of the chaos caused by defendant allowing her dog to run along the fence line of the deer pens. There is direct evidence from McDowell and Reno as to defendant’s dog running along the fence line and the deer in the pen reacting to the presence of the dog. McDowell himself was on the property in the vicinity of the pens at the time of the disturbance and saw the deer react, and in his words, “going crazy.” There is also evidence that deer get “spooked” very easily and can easily harm themselves if this situation occurs, and that this was a known danger *8 to both plaintiff’s agent, McDowell, and to defendant herself. McDowell had firsthand knowledge that Stryker was a healthy fawn on the day of the incident with no medical issues, and that immediately after the disturbance the fawn was found dead in the comer of the pen with blood running from its nose. It is therefore inferable that Stryker died as the result of reacting to the presence of the dog, becoming spooked, and striking the fence.
Defendant next argues that plaintiff spoliated all relevant evidence warranting dismissal of the complaint as an appropriate sanction. The factual basis for this claim is that McDowell disposed of Stryker’s carcass by placing it in a dumpster the day after the incident in question, thus depriving defendant of an opportunity to have the carcass examined to determine whether its neck had actually been broken.
The doctrine of spoliation of evidence attempts to compensate those whose legal rights have been impaired by the destruction of evidence by allowing for sanctions against the party responsible for the destmction of the evidence. Mt. Olivet Tabernacle church v. Edwin L. Weigand Div., 781 A.2d 1263 (Pa. Super. 2001, affirmed 571 Pa. 60, 811 A.2d 565 (2002). Although the doctrine is commonly utilized in product liability cases, application of the doctrine is not restricted to product liability, in general, a plaintiff has a duty to preserve relevant evidence wherein: (1) the plaintiff knows that litigation against the defendant is pending or likely; and (2) it is foreseeable that discarding the evidence would be prejudicial to the defendant. Mt. Olivet Tabernacle church v. Edwin L. Weigand Div., Supra. A plaintiff’s power to control an accident scene and to exercise authority over the preservation or destmction of evidence is a relevant factor *9 in determining responsibility for spoliation of evidence. Id. Although the court has discretion in determining the proper sanction, including jury instructions or dismissal of the action, it is held that courts should select the least onerous sanction commensurate with the spoliator’s fault and the other parties’ prejudice. Id. Where fault and prejudice are not severe, dismissal is inappropriate as a sanction for spoliation of evidence. Id.
In Schmidt v. Milwaukee Elec. Tool Corp., 13 F.3rd 76, 79 (1994), the third circuit court of appeals held that the trial court’s sanction of striking the testimony of plaintiff’s expert witness in its entirety on the grounds that the expert altered the allegedly defective product during the course of his examination by disassembling it was excessive. The Schmidt case noted that since the early 17th Century, courts have admitted evidence tending to show that a party destroyed evidence relevant to the dispute being litigated. Schmidt further noted that historically, such evidence permitted an inference known as the “spoliation inference,” that the destroyed evidence would have been unfavorable to the position of the offending party, citing Judge Breyer in Nation-Wide Check Corp. v. Forest Hills Distributors, Inc., 692 F.2d 214, 218 (1st Cor. 1982), who wrote, “The evidentiary rationale [for the spoliation inference] is nothing more than the common sense observation that a party who has noticed that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in same position who does not destroy the [evidence].” In Schmidt, the federal appeals court noted that the district court invoked a sanction far more serious than the spoliation inference. It barred all evidence emanating from the expert’s observations and *10 thereby deprived plaintiff of any opportunity to prove his case. Although the federal circuit court reaffirmed the inherent authority of the trial court to impose such a drastic sanction in an appropriate case, the appellate court concluded that the sanction was an abuse of discretion in the case before it. The Schmidt court held as follows:
We believe the key considerations in determining whether such a sanction [dismissal] is appropriate should be: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. See E. G. Dillon v. Nissan Motor Co. Ltd., 986 F.2d 263 (8th Cir. 1993); S.D.I. Operating Partnership L.P. v. Neuwirth, 973 F.2d 652 (8th Cir. 1992); Gorelick, et al., Supra, Section 3.16, P. 117 (“To fulfill the purposes of discovery sanctions...-that is, to restore the accuracy of the trial, compensate innocent victims and punish guilty spoliators-courts select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.”)
Schmidt v. Milwaukee Elec. Tool Corp., 13 F.3d at 79.
Here, there is no disagreement that plaintiff’s agent, McDowell, disposed of the carcass of the fawn. Thus, the destruction of the evidence was the fault of plaintiff. The court also finds that there is a degree of prejudice to the defendant since the opportunity is lost for the plaintiff to have the deer examined to determine if there was some other cause of the death of the deer from that alleged by *11 the plaintiff. However, this prejudice is ameliorated by the fact that the plaintiff still bears the burden of proof on causation, and the plaintiff itself has not obtained any expert testimony as to the cause of death that is based upon any examination of the carcass. Thus, the defendant has the benefit of the spoliation inference and an appropriate instruction at trial to offset any prejudice caused by the destruction of the carcass. Thus, the court finds that there is a lesser sanction that will avoid substantial unfairness to defendant. To the extent that punishment of the offending party is a consideration as to deter such conduct by others in the future, the court further finds that such factor has little application here, where it appears to the court that McDowell’s motive in destroying the carcass was not geared towards disposing of evidence, but as the result of being emotional about the loss of his fawn and not being mindful of the time of the evidentiary value of the carcass, even to his own prejudice, as an examination of the carcass could very well have supported his theory of the case. There is no indication in the record that McDowell intended to impair the ability of the defendant to defend herself by disposing of the carcass.
In Schroeder v. DOT, 551 Pa. 243, 710 A.2d 23 (1998), the Pennsylvania Supreme Court adopted the spoliation of evidence standards set forth by a third circuit court of appeals in Schmidt v. Milwaukee Elec. Tool Corp., Supra. in Mt. Olivet, Supra, the Superior Court acknowledged that the Schmidt factors had been adopted by the Pennsylvania Superior Court and engaged in an analysis of the factors. Relative to the analysis of fault, Mt. Olivet noted that fault has two components: responsibility and the presence or the absence of bad faith citing Pia v. Perrotti, 718 A.2d 321 (Pa. Super. 1998). As to this first component, Mt. *12 Olivet stated that a plaintiff has a general duty to preserve relevant evidence where: (1) the plaintiff knows that litigation against the defendant is pending or likely and it is foreseeable that discarding the evidence would be prejudicial to the defendant. Thus, under the Mt. Olivet analysis, McDowell could have afforded the defendant the opportunity to inspect the carcass and McDowell, as the plaintiff in Mt. Olivet, is not blameless for failure to do so. However, as to the second component of fault, which is the presence or absence of good faith, the court does find that McDowell did not act in bad faith but was simply acting out of emotion and a lack of understanding of the evidentiary value of the carcass.
Thus, in light of this court’s determinations of fault and prejudice, the court here finds that a proper exercise of discretion requires the court to refrain from issuing a sanction that would have the effect of dismissing Plaintiff’s case in its entirety. The court here finds that the least onerous sanction commensurate with the spoliator’s fault and defendant’s prejudice is a spoliation instruction to the jury, the specific instruction to be determined at trial.
For the foregoing reasons, the court will issue a separate order which will deny the defendant’s motion for summary judgment.
ORDER OF COURT
And now, this 13th day of April, 2015, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered, adjudged and decreed that the defendant’s motion for summary judgment is denied.